**STONESIFER et al. v. SWANSON et al.**
**Appeal of CLEARY.**

**Nos. 8546, 8547.**

Circuit Court of Appeals, Seventh Circuit.

Jan. 4, 1945.

Rehearing Denied Feb. 19, 1945.

Charles R. Aiken, F. Harold Bennett, and Aiken, McCurry, Bennett & Cleary, all of Chicago, Ill., for appellants Edna F. and Joseph N. Stonesifer.

John A. Brown, of Chicago, Ill., for appellant Wm. J. Cleary.

Chester W. Kulp, Joseph J. Sullivan, Jr., Thomas Dodd Healy, Harold Stickler, Matthias Concannon, Wm. H. Dillon, Wm. O. Burns, and Carl Pomerance, all of Chicago, Ill., for appellees.

Before EVANS, MAJOR, and MINTON, Circuit Judges.

EVANS, Circuit Judge.

This suit, based on diversity of citizenship, was brought, to set aside and vacate an estate settlement agreement. The plaintiff, Edna Stonesifer, is one of three daughters of the deceased, Lillian F. Swanson. The mother died testate, leaving her whole estate to two of her three daughters, Edna and Edith. She disinherited Ruth, and left nothing to her husband. The settlement of threatened litigation and an asserted dower right in the husband, defendant Carl Swanson, accounts for the making of the agreement which plaintiffs here seek to avoid. By this agreement Ruth and the testatrix' husband each receive one-sixth of the estate and Edna and Edith each receive one-third.

The trial court referred the issues to a master who found for the defendants. The master's report was approved by the court. Judgment was entered on these findings and plaintiffs appeal therefrom. The court reporter who attended the master also appeals from an allowance of $750.00 instead of the $1,626.40 which he had claimed.

Generally and broadly stated it is plaintiffs' contention that the settlement agreement should be set aside because it was reached through a breach of fiduciary relationships which existed between the executor, the stepfather and the attorney for the executor, and the two daughters who allegedly suffered by this agreement.

The Facts: Arvid and Lillian Bergstrom had three daughters, Edna, Edith and Ruth. Mr. Bergstrom was associated in business with the defendant, Carl Swanson, who also was married and had a son. Mr. Bergstrom died July 7, 1932. Mrs. Swanson also died. In June, 1936, Mrs. Bergstrom and Mr. Swanson were married. Bergstrom and Swanson, during

their partnership, obtained a twelve-apartment building in Chicago and placed a $30,000 mortgage upon it. The mortgage bore date of January, 1930, and was renewed several times. The evidence tended to show that Mrs. Bergstrom and Mr. Swanson each held $5,000 of these bonds.

The evidence is conflicting as to whether Mr. Swanson and Mrs. Bergstrom entered into an antenuptial agreement. The master found there was none. In February, 1941, Mrs. Swanson, formerly Mrs. Bergstrom, made a will leaving all her property to Edna and Edith. The will stated she purposely excluded her daughter Ruth from participation in the estate. There was a letter found in her lock box which gave her reasons for this disinheritance.

In the fall of 1941, the former Mrs. Bergstrom was taken ill and removed to a hospital, where she passed into a coma and died. A few days before she died, Edith went to her mother's safety deposit box and removed $17,000.00, the proceeds of her father's insurance. The existence of this amount was unknown to his partner. There is a conflict in the evidence as to the condition of her mother at the time she gave the direction to Edith to go to the bank and take this money and divide it with her sister, Edna. A witness for defendants testified that while her mother was in a coma, Edith, on her own impulse and to save the estate from possible tax, went to the bank and withdrew the money. On the other hand, Edith testified that she acted under her mother's direction and the surrounding circumstances strongly support her statement.

The master found there was not sufficient evidence to establish a valid gift at this time to Edna and Edith.

After the mother died, the stepfather became active. He caused the parties to consult the attorney, whom he knew personally and as to whom he held a favorable opinion. The parties mentioned in the will and he consented to the selection of defendant Anderson, as the attorney to whom they would go for legal enlightenment.

At the first meeting and at subsequent meetings there was considerable difference of opinion. At least, there is conflict as to what was said at the meetings. It is asserted that the two daughters expressed a wish that their sister share in the estate. It seems also clear that attorney Anderson advised the parties (a) that the talked-of antenuptial agreement was invalid, (b) that the stepfather had a dower right in the estate, and (c) that the third daughter could institute proceedings to contest the will. The attorney testified he attempted to avoid a family controversy and summoned them all to his office to ascertain whether they might not reach an amicable settlement. It appears that a settlement was made January 29, 1942. The will was admitted to probate on the same day.

Ruth filed a contest which was ordered dismissed by the order here appealed from.

We accept for the purpose of this argument the plaintiffs' theory that there existed a fiduciary relationship between the stepfather and the daughters; also, between the executor, the executor's attorney, and the legatees, the two daughters.

So approaching the evidence, we are nevertheless persuaded that on the issue of a breach of fiduciary relationships the evidence supports the finding of the master so far as Anderson, the attorney, and Hammerstrom, the executor, are concerned. It would serve no useful purpose to recite all the testimony, or the major portion of it, bearing on this question. It is sufficient to say that the evidence not only supports the finding of the master and the District Court, but in our opinion, makes any contrary finding quite inconsistent with that portion of the testimony which is clearly established and uncontradicted.

As to Swanson, the stepfather, the dispute is not so readily disposed of. We think a finding in favor of the plaintiffs as to him would have been supported by the evidence. On the other hand, we can not say there was no support for the findings as made. Conceding the fiduciary relationship existed between the stepfather and the daughters and also that the burden was upon the stepfather to show good faith on his part in the dealings which finally culminated in the agreement in question, we are not satisfied that the evidence warrants or justifies our disturbing the findings of the master confirmed as they are by the District Court.

This is not a trial de novo. The respect which we entertain for findings made by the trier of facts, who has had the opportunity of seeing and hearing the parties, makes it impossible for us to disturb the findings here made.

As to the sister, Ruth, still a different factual background exists which, however, needs no elaborate or detailed statement. She was the sister who had been disinherited by her mother. Reasons were given by the mother for this action. Perhaps Edna and Edith felt somewhat differently towards her. At least, that was their sentiment as reported by certain witnesses. There was no fiduciary relationship existing between them. She had been disinherited and she threatened to contest the admission of her mother's will. It is rather clear that there was not much support, if any, for her contest. Nevertheless, she had the right to her opinion and to file objections to the admission of said testament and she acted on that right.

It would appear that Edna and Edith were prompted by a worthy motive, —a sisterly regard for the disinherited Ruth and at the same time a desire to avoid the expense of a will contest, meritless as it may have been, by settling with her. They were all of age and under no disability.

The master's finding must be accepted as to the defendant Ruth.

Turning to Cleary's appeal, we find a court reporter whose regular charges exceeded the amount allowed him by the court as compensation for attending hearings of the master and transcribing the testimony given. The District Court's judgment as to the amount the court should allow the master and the court reporter is one which will not be disturbed unless a clear abuse is shown, because he is familiar with compensation paid to court appointees. He does not need the enlightenment of others similarly employed.

It would be rare indeed for us to order an increase in the compensation of district court officials (masters or court reporters). We would be much more inclined to reduce than to increase such allowances. Fortunately, we have had almost no occasion to do either. Perhaps the allowances of the various district courts in this circuit have been too meagre. We think it far better to err on that side than on the other.

Under all the circumstances we are not justified in increasing the allowance to Cleary.

The decree is affirmed.